UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL W. LAQUE,

      Plaintiff,

v.                                        Case No. 3:17cv99-RV-HTC

MICHAEL ADKINSON, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Michael Laque, proceeding *pro se* and *in forma pauperis*, sues Defendants Dr. James Sheppard, Nurse Cindy Weeks and Walton County Sheriff Michael Adkinson under 42 U.S.C. § 1983 for allegedly depriving him of adequate dental treatment in violation of the Fourteenth Amendment. The Defendants have moved for summary judgment. ECF Docs. 93, 94. Plaintiff responded in opposition (ECF Doc. 101) and Defendants filed a reply (ECF Doc. 102). The motion has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C). Considering the parties' submissions, the record and the relevant law, the undersigned recommends that the Defendants' Motion for Summary Judgment (ECF Docs. 93, 94) be GRANTED.

I.    Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the record taken as a whole could lead a rational fact finder to find for the nonmoving party. *Id.* Summary judgment is not appropriate "if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995). Generally, the Court must view the facts in the light most favorable to the non-moving party (here, Plaintiff) and draw all reasonable inferences in favor of that party. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009).

II.    Facts

Plaintiff's claims relate to events that occurred while he was a pretrial detainee at the Walton County Jail ("WCJ") from December 28, 2016, to July 12, 2017. The

facts pertinent to the resolution of Defendants' Motion for Summary Judgment are drawn from Plaintiff's verified third amended complaint[1] (ECF Doc. 84), the evidence submitted by Defendants (ECF Doc. 94, ECF Doc. 102-1) and the evidence submitted by Plaintiff (ECF Doc. 101 at 14-19).[2]  Nevertheless, matters stated below as "facts" for purposes of summary judgment review may not be the actual facts. *See Montoute v. Carr*, 114 F.3d 181, 182 (11th Cir. 1997).

Plaintiff was arrested and booked into the Escambia County Jail ("ECJ") in October 2016.  ECF Doc. 94-2 at 1.  In December 2016, Plaintiff began experiencing pain around a molar on the lower left side of his mouth.  ECF Doc. 84 at 7.  He complained about the issue to officials at the ECJ on December 15.  *Id.*

On December 28, 2016, Plaintiff was transferred to the WCJ.[3]  ECF Doc. 94-2 at 4.  During his initial medical evaluation, Plaintiff told Dr. James Sheppard he "had a dental issue, that [his] tooth was starting to give [him] problems."  ECF Doc.

---

[1] *See Sammons v. Taylor*, 967 F.2d 1533, 1545 n.5 (11th Cir. 1992) ("[F]acts alleged in an inmate's sworn pleading are sufficient and . . . a separate affidavit is not necessary."); *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding specific facts pled in a sworn complaint must be considered in opposition to a motion for summary judgment).

[2] Defendants object to the affidavit (ECF Doc. 101 at 19) submitted by Plaintiff in opposition to the Defendants' motion.  The undersigned finds that the affidavit is simply a summary of the facts alleged in the third amended complaint and opposition and is based on personal knowledge.  The undersigned, therefore, finds the objection should be overruled.

[3] Pursuant to a written contract, the Walton County Sheriff's Office agreed to temporarily house Escambia County inmates at the WCJ.  ECF Doc. 94-2 at 5-15.

94-1 at 4.  However, Plaintiff's "tooth wasn't acting up to that degree at that time, . . . and [Dr. Sheppard] said if [Plaintiff] had any problems to fill out a sick call."[4]  *Id.*

On December 30, 2016, Plaintiff requested a temporary filling for his molar, but he failed to appear for sick call the next morning.  ECF Doc. 94-2 at 17.  On January 2, 2017, Plaintiff reported his molar had lost its filling, which he claimed left nerves exposed and caused constant pain.  *Id.* at 18.  He stated the temporary filling did not work and asked that the tooth be removed.  *Id.*  The following day at sick call, Plaintiff was informed that if his family made payment arrangements with a dentist, WCJ staff would transport him to an appointment.  *Id.*  An examination revealed no signs or symptoms of an abscess and Plaintiff was given ibuprofen and Orajel.  ECF Doc. 94-4 at 1.

On January 5, 2017, Plaintiff submitted a grievance about his treatment, the lack of an onsite dentist and his inability to pay for an outside dentist; he demanded to have his tooth extracted.  ECF Doc. 94-2 at 20.  After Nurse Cindy Weeks denied the grievance, Plaintiff appealed the denial on January 10.  *Id.*  Tammy Godwin denied the appeal on January 11; Godwin wrote:

> Denied.  The medical staff have stated that you do not need to see a dentist at this time.  You may request a dental visit from Escambia county, but the medical staff at Walton have assessed your dental issue and find no[] reason for a visit to a dentist at this time.

---

[4] The tooth was "causing [Plaintiff] some discomfort, but it wasn't abscess and it wasn't . . . incapacitating [him.]"  ECF Doc. 94-1 at 4.

*Id.*

Plaintiff also submitted a sick-call request on January 5 for his "toothache." *Id.* at 21. Plaintiff, however, failed to appear for sick call on January 6. *Id.* Thus, later that day he submitted another sick-call request indicating his toothache made it difficult to eat and sleep. *Id.* at 22. Nurse Dawn Cooper examined Plaintiff on January 7 and found no facial swelling and no swelling in his gums; she issued him a refill of Orajel. ECF Doc. 94-3 at 6. Cooper also offered a written response to Plaintiff's January 7 sick-call request:

> If you have family/friend to pay for dental appointment our facility will transport you. Escambia County no longer has a Dentist on staff therefore we have been instructed by Escambia County to follow our Dental Protocol. We only provide Emergency Dental Care at the Discretion of the Jail Doctor. I enc[ourage] good oral hygiene and warm salt water gargles. Report any facial swelling or temp to medical staff. You can also try the temp filling to pack into the hole.

ECF Doc. 94-2 at 22.

On January 10, Plaintiff reported his Orajel had been stolen and asked for a replacement. *Id.* at 24. On January 12, Plaintiff requested a refill of his pain medication. *Id.* at 25. Both of these requests were granted by the WCJ medical staff. ECF Doc. 94-1 at 11; ECF Doc. 94-2 at 24-25; ECF Doc. 94-3 at 6.

Plaintiff submitted a sick-call request on January 20 describing his issue as "cracked tooth . . . swollen lymphnode . . . swollen jaw . . . EXTREMELY PAINFUL." ECF Doc. 94-2 at 28. When he arrived at medical, he indicated he had

been having problems "but [he] bit down on something and it's excruciating[ly] painful." ECF Doc. 94-3 at 6. An examination revealed mild swelling of his left lower jaw, no gumline swelling, mild enlargement of the left lymph node and no fever. *Id.* Plaintiff states his "molar developed an abscess." ECF Doc. 84 at 7. Medical staff at the WCJ "started [Plaintiff] on clindamycin on [January 21] and 600 mg ibuprofen (2x) daily with salt water rinses, but [he] still saw no doctor or dentist." *Id.*

On January 21, 2017, Plaintiff submitted a grievance which indicated he had a "cracked tooth that is causing constant pain, problems eating, and headaches." ECF Doc. 94-2 at 29. Plaintiff admitted he was being treated with salt water rinses, ibuprofen and clindamycin but argued that was "not a solution to the issue . . . only a buffer at best." *Id.* Nurse Weeks responded to the grievance on January 25, noting she saw Plaintiff at 12:30 a.m. and Escambia County would not "pay for a dental trip unless [he met] the criteria for care." *Id.* Weeks stated his current treatment "should help resolve the problem," but offered to move him to the infirmary for further observation if he continued to experience discomfort. *Id.* at 29-30.

Plaintiff submitted another sick-call request on January 23 stating his "tooth issue [was] not getting any better" and requesting that it be pulled. *Id.* at 31. On January 24, WCJ staff observed no facial swelling, no drainage and instructed Plaintiff to complete the antibiotics. *Id.*; ECF Doc. 94-4 at 6. Staff also advised

Plaintiff that if he had "someone to pay for a dental visit [the WCJ could send him] to the dentist per ECJ." ECF Doc. 94-2 at 31.

On January 25, Plaintiff submitted a request to Escambia County, stating he had "an abscess tooth with swelling, extreme pain, drainage, and sometimes fever." *Id.* at 32. He asserted "the tooth is cracked into the gum line and cannot be fixed." *Id.* An individual named H. Allison responded:

> Your medical care is not coordinated through this form. It is coordinated through the Walton Medical Department. All discussions and topics [that] reference your medical treatment need to be with the Walton Medical department only. Escambia County no longer has a Dentist on Staff and will no longer be transporting patients to Escambia for dental work. If you have any medical concerns you need to submit a sick call request to be evaluated by the Walton Medical Doctor. The medical doctor will prescribe you the proper treatment that is medically necessary. For dental work it is up to you and your family to coordinate payment and care for your dental treatment with Walton's contracted dentist and Walton will transport you to your appointments.

*Id.*

Plaintiff appealed Weeks' January 25 grievance response on January 27 while housed in the infirmary,[5] claiming he had not seen a doctor and could not afford to pay for a visit to the dentist. *Id.* at 29. On January 30, Tammy Godwin denied the grievance, finding "no basis for referring [Plaintiff] to a dentist at this time." *Id.*

---

[5] The record indicates Plaintiff was moved to the infirmary on January 26, 2017. ECF Doc. 94-2 at 29; ECF Doc. 101 at 4.

On January 27, Plaintiff: (1) submitted a medical request indicating the abscess in his "mouth burst and is only causing very minor discomfort" and he was "ready to go back to [his] housing unit when cleared" (*id.* at 33); and (2) submitted a sick-call request requesting a "renewal on Orajel and ibuprofen" (*id.* at 34). Staff reported: "nothing noted #17 bucal no abscess, no temp, no facial swelling." ECF Doc. 94-4 at 8. Plaintiff was given ibuprofen and Orajel (*id.*), and Nurse Weeks released him from the infirmary back to housing (ECF Doc. 94-1 at 15).

On January 31 and February 1, Plaintiff requested more Orajel. ECF Doc. 94-2 at 37-38. Plaintiff's request for Orajel was denied on February 1, 2017, because he was given a refill tube on the morning of January 29 and the refill was intended to last five (5) days. ECF Doc. 94-4 at 10.

On February 3, Dr. Sheppard noted Plaintiff "has not had fever, facial swelling or other objective evidence of abscessed tooth" and "ECJ has not been open to dental consult for this ECJ [inmate]." ECF Doc. 94-3 at 5. Sheppard suggested monitoring Plaintiff for three to five days in the infirmary when a bed became available and performing a complete blood count test. *Id.* Plaintiff voiced no complaints the night of February 3 in the infirmary; on the morning of February 4 Plaintiff had no facial swelling and he stated his tooth was feeling better. *Id.* Likewise, on the morning of February 5, he had no facial swelling and stated his "tooth [felt] good at this time." *Id.*

On February 5, 2017, Plaintiff saw Dr. Sheppard[6]; Sheppard noted: (1) the symptoms associated with Plaintiff's toothache had resolved; (2) there was "no fever, chills, facial swelling or any objective evidence of dental abscess on evaluation [and] observation in the infirmary"; (3) the ECJ refuses to follow up as Plaintiff's "dental problem is not an emergency"; (4) "eval[uation] today reveals no facial swelling, tenderness, [increased] heat or erythema at present"; and (5) Plaintiff could be released from the infirmary to security. ECF Doc. 94-2 at 39; ECF Doc. 94-3 at 5.

On February 6, 2017, Plaintiff submitted a medical grievance regarding staff's failure to provide his "2:00 pm medication" on February 1, 2 and 6. ECF Doc. 94-2 at 40. Weeks responded to the grievance on February 7, informing Plaintiff "[t]hese are as needed medications. You will need to let us know if you need them. They do not come to you automatically. If you don't get them, then ask the officer to call about them. They are OTC Rx. (incidentally, when you left the infirmary you said that your tooth was good). If we need to revisit this problem, you can address this in a sick call." *Id.* Plaintiff appealed the grievance, stating he "told officers each time [but] still [did] not receive my meds" and "simply because I was

---

[6] Plaintiff's complaint and deposition suggest this interaction with Dr. Sheppard occurred in March. ECF Doc. 84 at 8; ECF Doc. 94-1 at 9. Plaintiff's February 5, 2017 medical request indicates it occurred in February. ECF Doc. 94-2 at 39.

not hurting at the moment I left the infirmary does not mean it does not still hurt." *Id.*

On February 25, 2017, Plaintiff submitted a sick-call request for ibuprofen and Orajel for his "cracked tooth." *Id.* at 41. The next day, the nurse noted he had no signs or symptoms of an abscess; he also was given ibuprofen, salt water gargles and Orajel. ECF Doc. 94-3 at 4; ECF Doc. 94-5 at 7.

Plaintiff requested a refill of Orajel and ibuprofen for his "ongoing dental issue" on April 24, 2017. ECF Doc. 94-2 at 44. The next day Nurse Cooper examined Plaintiff and found no facial swelling, no swelling in Plaintiff's gums, no abscess and no drainage. ECF Doc. 94-3 at 3. Cooper provided Plaintiff the ibuprofen and Orajel as requested. ECF Doc. 94-4 at 13. Plaintiff requested another refill of Orajel and ibuprofen on April 29 for his "very painful" "cracked tooth." ECF Doc. 94-2 at 46.

On May 1, Plaintiff requested that he be given ibuprofen three times per day because it was wearing off at noon. *Id.* at 48. Plaintiff states his tooth "was really flaring up again and hurting really bad." ECF Doc. 94-1 at 20. Staff noted "no temp," "no facial swelling" and "no abscess." ECF Doc. 94-4 at 14. Nurse Bishop denied Plaintiff's request for additional ibuprofen, citing concerns about damage to his liver and indicating he "didn't need it three times daily." ECF Doc. 94-1 at 20.

Plaintiff requested a renewal of his ibuprofen on May 3.  ECF Doc. 94-2 at 49.  On May 4, Nurse Cooper found Plaintiff's temperature was normal and he had no facial swelling; Cooper gave him the ibuprofen he requested.  ECF Doc. 94-3 at 3; ECF Doc. 94-4 at 15.  Plaintiff complained about his tooth again on May 6 and requested its removal, but he failed to show up for sick call on May 7.  ECF Doc. 94-2 at 50; ECF Doc. 94-4 at 16.

On May 13, 2017, Plaintiff requested that his tooth be removed because it was painful and he "had this issue since 12/30/16."  ECF Doc. 94-2 at 53.  An examination the next day showed he had no facial swelling and his temperature was normal; he was encouraged to practice good oral hygiene.  ECF Doc. 94-3 at 2; ECF Doc. 94-4 at 17.  Plaintiff was prescribed extra strength Tylenol and Orajel.  ECF Doc. 94-5 at 4.

Plaintiff submitted another sick-call request regarding his tooth on June 11, 2017.  ECF Doc. 94-2 at 54.  Nurse Bishop noted Plaintiff was complaining of pain around teeth 17 and 18.  ECF Doc. 94-3 at 1; ECF Doc. 94-4 at 18.  Bishop found no facial swelling and no abscess but gave Plaintiff Orajel and ibuprofen.  *Id.*  Likewise, at sick call on July 4, Nurse Cooper found no facial swelling and gave Plaintiff Orajel and ibuprofen.  ECF Doc. 94-3 at 1.

On July 12, 2017, Plaintiff returned to the ECJ.  ECF Doc. 84 at 9; ECF Doc. 94-3 at 1.  After entering the custody of the Florida Department of Corrections

("FDOC"), Plaintiff was seen by a dentist at Northwest Florida Reception Center ("NWFRC") on November 27, 2017; the dentist recommended removing teeth 1 and 19 but noted referral to an oral surgeon was not necessary. ECF Doc. 84 at 9; ECF Doc. 94-6 at 4-5. Plaintiff was transferred to Blackwater River Correctional Facility ("BRCF") on January 2, 2018. ECF Doc. 84 at 9. On February 13, 2018, a dentist removed tooth 19, the tooth Plaintiff says caused him problems at the WCJ.[7] *Id.*; ECF Doc. 94-6 at 7.

Plaintiff submitted an inmate request on March 11, 2018, which asserted the "dental work ordered [at] NWFRC" had not been completed. ECF Doc. 94-6 at 3. The response by the dentist informed Plaintiff the "the intake evaluation doesn't actually 'order' any dental treatment." ECF Doc. 94-6 at 3.

On October 16, 2018, the dentist at BRCF noted teeth 17 and 18 should be extracted. ECF Doc. 94-6 at 2. When Plaintiff arrived for those extractions on January 3, 2019, however, he complained of pain around tooth 2 and requested that the dentist remove it. ECF Doc. 94-6 at 1. The dentist noted teeth 1 and 2 were also on Plaintiff's treatment plan, agreed to the request and extracted teeth 1 and 2. ECF Doc. 94-6 at 1, 6.

---

[7] Although Plaintiff states in his affidavit (ECF Doc. 101 at 19) that his tooth was extracted "upon reception into State Prison," he also attaches to his response the same Consent for Tooth Removal submitted by the Defendants, showing that tooth 19 was extracted on February 13, 2018. ECF Doc. 101 at 18.

III.    Discussion

    A.    Deliberate Indifference

A § 1983 claim may arise when prison officials act with deliberate indifference to an inmate's serious medical needs.[8] *See Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *see also Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991) ("Federal and state governments . . . have a constitutional obligation to provide minimally adequate medical care to those whom they are punishing by incarceration.").

To establish deliberate indifference, a plaintiff "must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306-07 (11th Cir. 2009). A serious medical need is "one that, if left unattended, poses a substantial risk of serious harm." *Id.* at 1307 (quoting *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)). For an actor to be found to have acted with deliberate indifference to that need, a plaintiff must prove: "(1)

--------------------------------------------------

[8] Plaintiff was a pretrial detainee while at the WCJ and thus his claims fall under the Fourteenth Amendment. Nevertheless, because the standards governing the medical claims of pretrial detainees are the same as those applicable to convicted prisoners, the Court will reference the Eighth Amendment throughout this Report and Recommendation. *See Cottrell v. Caldwell*, 85 F.3d 1480, 1490 (11th Cir. 1996) ("Claims involving the mistreatment of arrestees or pretrial detainees in custody are governed by the Fourteenth Amendment's Due Process Clause instead of the Eighth Amendment's Cruel and Unusual Punishment Clause, which applies to such claims by convicted prisoners. However, the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving arrestees or pretrial detainees.") (citations omitted).

subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than gross negligence." *Goodman v. Kimbrough*, 718 F.3d 1325, 1331-32 (11th Cir. 2013) (quoting *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1158 (11th Cir. 2010)). For an actor to have subjective knowledge, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference requires more than "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (citation and quotations omitted). Prison officials may avoid Eighth Amendment liability by showing, for example: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger"; (2) "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent"; or (3) "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844.

Defendants first argue the condition of Plaintiff's molar did not constitute a serious medical need. The undersigned disagrees. The evidence shows the medical staff at the WCJ felt Plaintiff's dental condition was serious enough to require

treatment.  *See Mann*, 588 F.3d at 1307 ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (citation and quotation omitted).  Furthermore, the evidence indicates that, if left unattended, Plaintiff's molar caused him severe pain.  Also, in late January 2017 Plaintiff had an abscess (infection), which certainly poses a risk of serious harm.  *See Dobbey v. Mitchell-Lawshea*, 806 F.3d 938, 940 (7th Cir. 2015) ("A tooth abscess is not a simple toothache.  It is a bacterial infection of the root of the tooth, and it can spread to the adjacent gum and beyond—way beyond.  It is often painful and can be dangerous.").  Thus, the undersigned finds the condition of Plaintiff's molar constituted a serious medical need.

Based on the facts presented, however, a jury could not reasonably conclude that Defendants Sheppard and Weeks disregarded that need by conduct more culpable than gross negligence.  These Defendants—and the other medical personnel at the WCJ—saw Plaintiff frequently at sick call.  They examined him to evaluate the seriousness of his condition and those examinations yielded mostly normal findings.  They treated his subjective complaints of pain with ibuprofen, Tylenol and Orajel.[9]  Staff also encouraged Plaintiff to use salt water gargles and practice good

---

[9] Plaintiff also states he was given Orajel in amounts that exceeded the recommended dosage, which, according to "the usage instructions printed on the bottle itself," is seven (7) days without seeing a doctor.  ECF Doc. 84 at 8.  The "extended usage of Orajel given as a pain buffer . . .

oral hygiene.  When Plaintiff's mouth became infected, he was moved into the infirmary for close observation and prescribed an antibiotic, clindamycin, which helped resolve the infection.  *Id.*

The evidence, therefore, shows Defendants Sheppard and Weeks did not exhibit deliberate indifference to Plaintiff's dental needs.  Plaintiff's desire for a different, less conservative course of treatment, namely extraction of the molar, does not amount to deliberate indifference.  *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) ("[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment.") (quoting *Estelle*, 429 U.S. at 107); *Harris*, 941 F.2d at 1505 ("Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment.") (citation omitted); *see also Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) ("Whether and how pain associated with

---

caused enamel to erode from another molar adjacent to the problem one," creating "yet another serious dental issue."  *Id.*  Plaintiff has not submitted evidence establishing that excessive use of Orajel poses a substantial risk of serious harm or that Defendants knew about that risk.  Nor has Plaintiff submitted evidence indicating Defendants' failure to adhere to the usage instructions on the Orajel tube was anything more than negligent.  *Cf. Campbell v. Davis*, Case No. 5:16cv01275-LSC-JEO, 2017 WL 4052826, at *9 (N.D. Ala. July 31, 2017) ("Accidentally administering the wrong medication does not establish a 'conscious or callous indifference.'") (citations omitted).

medical treatment should be mitigated is for doctors to decide free from judicial interference, except in the most extreme situations.").

Plaintiff tries to support his deliberate indifference claim by pointing out the FDOC removed his molar on February 13, 2018. He argues this evidence shows his molar should have been removed while he was confined at the WCJ. However, the timing of when Plaintiff's molar was removed, coming seven (7) months after his release from the WCJ, undercuts Plaintiff's claim. If the FDOC's dentist did not believe Plaintiff's molar required immediate extraction in November 2017, it cannot be said that the Defendants' failure to remove it prior to July 12, 2017, was "so grossly incompetent, inadequate, or excessive as to shock the conscience or be intolerable to fundamental fairness."[10] *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) (citation omitted).

With respect to Sheriff Adkinson, since the treatment Plaintiff received at the WCJ did not violate his constitutional rights, Adkinson cannot be held liable for causing such a violation, regardless of any custom or policy he may have.[11]  *See Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 917-18 (11th Cir. 2017) ("[B]ecause

---

[10] The treatment provided by the FDOC is further of limited benefit to Plaintiff because "what one medical profession[al] determines at a later point in time does not support a claim of deliberate indifference." *Ross v. Corizon Med. Servs.*, 700 F. App'x 914, 917 (11th Cir. 2017) (citing *Harris*, 941 F.2d at 1505).

[11] Plaintiff does not allege he ever interacted with Sheriff Adkinson or that Sheriff Adkinson personally participated in any treatment decisions related to him.

Mr. Ross has not demonstrated that there was a constitutional violation in this case, by extension, he cannot establish that Corizon participated in or caused such a violation.") (citation omitted); *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008) ("Without an underlying violation of [a detainee's] constitutional rights, [a sheriff] cannot be liable in his individual or official capacity for a failure to train [a deputy] and [a county] cannot be liable on the ground that its policy caused a constitutional violation."); *Palermo v. Corr. Med. Servs. Inc.*, 133 F. Supp. 2d 1348, 1363 (S.D. Fla. 2001) ("It almost goes without saying that there can be no custom of deliberate indifference to a Plaintiff's Constitutional rights for those Plaintiffs who have not suffered a Constitutional tort.").

      B.    Equal Protection

Plaintiff also alleges the Defendants violated the Equal Protection Clause of the Fourteenth Amendment "due to being denied dental care when the need was apparent due to his indigence." ECF Doc. 84 at 10. The Equal Protection Clause requires the government to treat similarly situated people in a similar manner. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To establish an equal protection violation, a plaintiff must demonstrate that he is similarly situated to others who received more favorable treatment, and that his discriminatory treatment was based on some constitutionally protected interest, such as race. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001). Plaintiff has not shown the

Defendants' alleged treatment of him was based on a constitutionally protected interest because the Supreme Court "has never held that financial need alone identifies a suspect class for purposes of equal protection analysis." *Maher v. Roe*, 432 U.S. 464, 471 (1977) (citations omitted); *see also Carson v. Johnson*, 112 F.3d 818, 821-22 (5th Cir. 1997) ("Neither prisoners nor indigents constitute a suspect class.") (citations omitted). Instead, the evidence shows the treatment Plaintiff received was based on the Defendants' medical judgment that Plaintiff's dental condition was not serious enough to warrant a visit to the dentist. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977) ("Proof of . . . discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

The Supreme Court has recognized "class of one" equal protection claims where a plaintiff asserts that he was irrationally discriminated against on an individual basis, rather than as a member of a particular group. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). A plaintiff can establish a "class of one" claim by showing that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Id*. at 564. "To be 'similarly situated,' the comparators must be prima facie identical in all relevant respects." *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1264 (11th Cir. 2010) (quotation and emphasis omitted). Plaintiff, however, has failed to

identify any WCJ inmate experiencing the same dental issue as him who was treated differently.  In civil rights cases, more than conclusory and vague allegations are required to state a cause of action under 42 U.S.C § 1983.  *See Novak v. Cobb Cty.-Kennestone Hosp. Auth.*, 849 F. Supp. 1559, 1572 (N.D. Ga. 1994).   Thus, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

Accordingly, it is RECOMMENDED:

1.    That Defendants' Motion for Summary Judgment (ECF Docs. 93, 94) be GRANTED.

2.    That the clerk be directed to enter judgment in favor of Defendants and close the file.

At Pensacola, Florida, this 1st day of August, 2019.


*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.